Affirmed and Memorandum Opinion filed October 23, 2007








Affirmed
and Memorandum Opinion filed October 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00149-CV

_______________

 

TIMOTHY J. CARPENTER, MERVIN G. SCHAEFER,

JAMES P. MALONEY, OLDCOSY CORPORATION,

HENRY JACKSON, DAVID REINDI, HENRY C. HESS,

DAVID FALLDORF and JANE P. KOTH, 

Appellants

 

V.

 

EXELON CORPORATION and

EXELON ENTERPRISES COMPANY, L.L.C., Appellees

                                                                                                                                               


On Appeal from the 133rd  District Court

Harris County, Texas

Trial Court Cause No. 2005-61496

                                                                                                                                                

 

M E M O R A N D U M   O P I N I O N








In this interlocutory appeal, Timothy
J. Carpenter, Mervin G. Schaefer, James P. Maloney, Oldcosy Corporation, Henry
Jackson, David Reindi, Henry C. Hess, David Falldorf and Jane P. Koth (Aappellants@) appeal an order granting the
special appearances[1] filed by
Exelon Corporation (AExelon@) and Exelon Enterprises Company, L.L.C. (AEnterprises@) on the grounds that the trial court
had general and specific jurisdiction over them.  We affirm.

                                                                   Background

Exelon Corporation is a utility
holding company that owns Exelon Enterprises Company, L.L.C..  Enterprises, in
turn, owned a 97% interest in InfraSource, Inc. (AInfraSource@), and appellants, along with others,
owned the remaining 3%.  Enterprises sold InfraSource to GFI Energy Ventures (AGFI@).  As part of the merger agreement
(the Aagreement@) for this transaction, Enterprises
agreed to indemnify InfraSource for potential environmental remediation at a
property located in Deer Park, Texas, and Exelon agreed to guarantee Enterprises=s indemnity obligation to
InfraSource.

Appellants sued appellees and others
in Harris County, Texas for breach of fiduciary duty, fraud, and negligence in
connection with the sale of InfraSource to GFI.  Appellees filed special
appearances, which the trial court granted, dismissing appellants= suit against appellees.

                                                            Standard
of Review

A court=s exercise of personal jurisdiction
over a nonresident defendant is an issue of law that is reviewed de novo. 
Moki Mac River Expeditions v. Drugg, 221 S.W.3d. 569, 574 2007 (Tex.
2007).  Where, as here, a trial court does not issue findings of fact or
conclusions of law, all facts necessary to support the trial court=s ruling and supported by the
evidence are implied in favor of the trial court=s decision.  Id.

                                                          Personal
Jurisdiction








The Texas long‑arm statute
authorizes personal jurisdiction over a nonresident defendant who Adoes business@ in Texas.  See Tex. Civ.
Prac. & Rem. Code ' 17.042(1) (Vernon 1997).  However, because the long-arm
statute reaches only as far as federal due‑process requirements permit,
personal jurisdiction can only be exercised over a defendant who has sufficient
minimum contacts with the forum state, and only if the assertion of
jurisdiction comports with Atraditional notions of fair play and substantial justice.@  IRA Res., Inc. v. Griego,
221 S.W.3d 592, 596 (Tex. 2007).  To meet the minimum contacts requirement, a
defendant must act deliberately and Apurposefully avail@ itself of the privilege of
conducting activities in the forum state, thereby invoking the benefits and
protections of its laws.  Id.[2]

A nonresident defendant's forum state
contacts may give rise to two types of personal jurisdiction.  Moki, 221
S.W.3d at 575.  If the defendant has made continuous and systematic contacts
with the forum state, general jurisdiction is established whether or not the
defendant's alleged liability arises from those contracts.  Id. 
Conversely, specific jurisdiction is established if, among other things, the
defendant's alleged liability arises out of or is related to an activity
conducted within the forum.  Id. at 575B576.

                                                            Specific
Jurisdiction

Appellants= first issue challenges the granting
of appellees= special appearance based on specific jurisdiction, which requires a
substantial connection between the defendant=s in-state activities and the operative
facts of the litigation.  Id. at 584B85.[3] 


In this case, appellants contend
that: (1) appellees purposefully availed themselves of the benefits of
conducting business in Texas by agreeing to indemnify InfraSource for costs








incurred for remedial work in Deer
Park, Texas; and (2) appellees= alleged liability in this case is substantially related to
the environmental remediation indemnity provision that is applicable to the
property located in Texas.  Although appellants concede that no Texas case has
held that an indemnity provision is alone sufficient to support specific
jurisdiction, they assert that the indemnity provision in this case is like a
standard insurance policy that provides for coverage anywhere in the world that
the policyholder does business and should therefore provide a basis for minimum
contacts in Texas.[4]  Appellants
also contend that the appellees= contacts with Texas were purposeful and that appellees will
benefit from Texas environmental laws, which will determine and limit the
extent of their indemnification obligation.








However, appellants cite no
authority, and we have found none, indicating that an  indemnity agreement is
the equivalent of insurance policy for purposes of establishing minimum
contacts; and at least three Texas cases[5]
have held that an indemnity obligation is not sufficient to establish specific
jurisdiction where, as here, the claims asserted are not based on a breach of
that obligation.[6]  See Moki,
221 S.W.3d at 585.  Because the merger agreement was not executed in Texas, and
appellants do not allege that appellees have committed any actionable conduct
in this State, let alone any such conduct that relates to actual activities
here, specific jurisdiction over the appellees has not been shown. 
Accordingly, appellants= first issue is overruled.

                                                            General
Jurisdiction 

Appellants= second issue contends that the trial
court had general jurisdiction over  appellees because: (1) appellees own and
operate a website that is accessible from Texas; and (2) the website is
highly-interactive in that it allows customers and vendors to conduct business
through the website.








General jurisdiction allows the
exercise of jurisdiction over a defendant if its contacts with the forum state
are continuous and systematic, even if the cause of action did not arise from
or relate to those contacts.  PHC-Minden  L. P. v. Kimberly-Clark Corp.
No. 05B0823, 2007 WL 2457843, at *2B3, (Tex. Aug. 31, 2007).  Internet
websites may support a finding of general jurisdiction, and most courts use a Asliding scale@ to determine whether Internet
activity permits general jurisdiction.[7]  At one end
of the sliding scale, a website may support a finding of personal jurisdiction
when a defendant clearly does business over the Internet by entering into
contracts and repeatedly transmitting  computer files to and from the forum
state.[8]  At the other
end, personal jurisdiction can not be exercised over a defendant who merely Apassively@ posts  information on the Internet.[9] 
Courts evaluate contacts in the middle of this sliding scale based on the level
of interactivity and the commercial nature of the exchange of information. Experimental
Aircraft, 76 S.W.3d at 507.

In this case, appellants contend that
the website, www.exeloncorp.com, is owned and operated by Exelon because the
website states it Ais owned and operated by Exelon Corporation and its
affiliates@ and contains the phrase A8 2002 Exelon Corporation.@  However, Scott Peters, the
Assistant Corporate Secretary for Exelon, testified that the website is
operated by Exelon Business Services Company, a separate corporation from
appellees.  Moreover, there is evidence that Exelon is a holding company with
no employees or business operations of any type, and Peters testified,
accordingly, that no Exelon employees operate the website.  Additionally, the
website only Apassively@ provides information to users about Exelon (Enterprises is
not mentioned in the website at all[10]) and does
not allow Exelon to interact with users or they with it.[11] 
Because the record thus reflects that neither appellee operates the website,
and the website was not interactive with respect to either of them, it does not
support a finding that either appellee had systematic contacts with Texas based
on the website.  Accordingly, appellants= second issue is overruled, and the 

 

 








judgment
of the trial court is affirmed.

 

 

 

/s/        Richard H. Edelman

Senior Justice

 

 

Judgment rendered and Memorandum
Opinion filed October 23, 2007.

Panel consists of Justices Frost,
Seymore, and Edelman.*









[1]           See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(7) (Vernon Supp. 2006) (allowing appeal from
an interlocutory order that Agrants or
denies the special appearance of a defendant . . .@) 





[2]           In determining the purposeful availment
requirement: (1) only the defendant's forum state contacts matter, not anyone
else's; (2) the contacts must be purposeful, not merely random, isolated, or
fortuitous; and (3) a nonresident defendant must seek some benefit, advantage,
or profit by "availing" itself of the jurisdiction, thus impliedly
consenting to suit in the forum.  See Michiana Easy Livin= County, Inc. v.Holten, 168 S.W.3d 777, 785 (Tex. 2005).





[3]           See, e.g., Moki, 221 S.W.3d
at 585, 587B88 (deciding that a nonresident=s in-state promotional activities were too attenuated
to satisfy specific jurisdiction in Texas because the actual focus of the
litigation at trial would be the alleged negligence of the defendant for
failing to exercise reasonable care); BMC Software Belgium, N.V.  v.
Marchand, 83 S.W.3d 789, 796B87
(Tex. 2002) (deciding that specific jurisdiction did not exist over a foreign
subsidiary where the plaintiff=s causes of
action could only arise from activities that occurred outside of Texas).





[4]           Compare Guardian Royal Exch. Assurance,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 232 (Tex. 1991)
(holding that the liability insurer of a corporation and its 120 subsidiaries
located in many countries, including the United States, could reasonably
anticipate litigation in any state), with Malaysia British Assurance, SDN,
BHD, v. El Paso Reyco, Inc., 830 S.W.2d 919, 921 (Tex. 1992) (holding that
in personam jurisdiction could not be exercised by a Texas court over a foreign
corporation that reinsured a policy of insurance issued by another foreign
corporation to cover a Texas resident).





[5]           See Exito Elecs., Co. v. Trejo, 166
S.W.3d 839, 857 (Tex. App.CCorpus Christi
2005, no pet.); Koll Real Estate Group, Inc. v. Howard, 130 S.W.3d 308,
316 (Tex. App.CHouston [14th  Dist.] 2004, no pet.); Koll Real
Estate Group, Inc. v. Purseley, 127 S.W.3d 142, 147B48 (Tex. App.CHouston
[1st Dist.] 2003, no pet.).





[6]           In the merger, Enterprises received $25
million for undertaking various obligations, including the contingent liability
for the indemnity obligation.  Appellants contend that appellees overstated the
amounts of these contingent liabilities in order to receive a portion of the
merger proceeds without paying appellants their pro rata share.  Appellants
claim that, because appellees= promise to
indemnify InfraSource for money it may spend on environmental remediation in
Texas is one of the alleged overvalued contingent liabilities, there is a
substantial connection between appellees=
in-state activities and the operative facts of this lawsuit.





[7]           See e.g., Experimental Aircraft Ass'n,
Inc. v. Doctor, 76 S.W.3d 496, 506B07
(Tex. App.CHouston [14th Dist.] 2002, no pet.); but see
Weldon-Francke v. Fisher, No. 14B06B00834BCV, 2007 WL
2592990, at * 8 & n.4 (applying Asliding
scale@ and stating: AWe
note that even if the website were on the opposite end of the sliding scale
[allowing a defendant to do business over the Internet], research shows no
Texas cases holding that general jurisdiction can be based on such a website
alone...@).  





[8]           Experimental Aircraft,76 S.W.3d at
506B07; Compuserve, Inc. v. Patterson, 89 F.3d
1257, 1264 (6th Cir, 1996). 





[9]           Experimental Aircraft, 76 S.W.3d at
506B07.





[10]          There is no evidence that Enterprises has any
connection to the website and appellants=
brief does not argue that the website is a basis for general jurisdiction over
Enterprises.





[11]          See CSR Ltd. v. Link, 925 S.W.2d 591,
595 (Tex. 1996) (requiring that a defendant conduct substantial activities with
the forum); Reiff v. Roy, 115 S.W.3d 700, 706 (Tex. App.BDallas 2003, pet. denied) (finding that a website
providing maps and directions did not constitute systematic and continuous
contact between the defendant and Texas). Appellants argue that Exelon=s subsidiaries=
customers and suppliers are able to engage in online transactions through the
website.  However, the use of the website by Exelon=s subsidiaries generally cannot be imputed to Exelon
to establish personal jurisdiction over Exelon.  See, e.g., Commonwealth
Gen. Corp. v. York, 177 S.W.3d 923, 925 (Tex. 2005) (stating, when
analyzing personal jurisdiction, Aseparate
corporations are presumed to be distinct entities@); Zamarron v. Shinko Wire Co., 125 S.W.3d 132, 142 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (stating A[a]s long as the parent and subsidiary maintain
separate and distinct corporate entities, the presence of one in a forum state
may not be attributed to the other.@). 
In addition, appellants have asserted no claims to disregard the separate legal
existence of these corporations. 





*           Senior Justice Richard H. Edelman sitting
by assignment.