*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# MEMORANDUM OPINION

No. 04-08-00734-CV

**ICON BUILDING SYSTEMS, LLC**,
Appellant

v.

**SNJ VENTURES, LLC**,
Appellee

From the 2nd 25th District Court, Guadalupe County, Texas
Trial Court No. 08-0448-CV
Honorable Gary L. Steel, Judge Presiding

Opinion by: Rebecca Simmons, Justice

Sitting: Karen Angelini, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: May 13, 2009

AFFIRMED

This case concerns an alleged breach of contract by a nonresident company. Appellant ICON Building Systems, LLC sued Appellee SNJ Ventures, LLC, an Indiana company, for canceling a contract to purchase several metal buildings for use in Indiana. The trial court sustained SNJ's special appearance and dismissed ICON's suit. We hold that SNJ's conduct did not meet the "purposeful availment" required to establish minimum contacts with Texas and we affirm the order of the trial court.

## BACKGROUND

Based on previous business dealings between them, SNJ Ventures, LLC asked Aircraft Structures, Inc. (ASI),[1] an Arizona company, about fabricating a set of metal buildings to use as aircraft hangars in Indiana. ASI prepared a proposal for SNJ using design and cost information provided by ICON Building Systems, LLC, a Texas company. On November 4, 2007, SNJ's managing member accepted ASI's proposal and signed a Purchase Agreement (the Agreement). Sometime after the Agreement was executed, SNJ's architect, general contractor, and structural engineer (SNJ's agents) asked ASI technical questions about the buildings' designs which ASI could not answer. To get answers to their questions, ASI asked SNJ's agents to contact ICON's staff directly. Thereafter, SNJ's agents and ICON exchanged e-mails, telephone calls, and drawing files in their respective efforts to clarify the design specifications for the hangars. In early January 2008, after numerous communications, SNJ told ICON, and then ASI, that SNJ had lost confidence in ICON's ability to produce the hangars and asked for a return of SNJ's initial payments. A few days later, ASI assigned its rights in the Agreement to ICON. In March 2008, ICON filed suit against SNJ requesting a declaratory judgment, alleging anticipatory breach of contract, and seeking damages. In September 2008, the trial court sustained SNJ's special appearance and dismissed ICON's suit. ICON appeals seeking reversal of the order.

## STANDARD OF REVIEW

"Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance *de novo*."

---

[1] ASI markets and sells aircraft hangars, but does not manufacture them.

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). "When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer 'all facts necessary to support the judgment and supported by the evidence . . . .'" *Id.* (quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

### MINIMUM CONTACTS

The Due Process Clause permits a state to exercise personal jurisdiction over a non-resident defendant with minimum contacts when exercising jurisdiction will not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Dawson-Austin v. Austin*, 968 S.W.3d 319, 326 (Tex. 1998). The Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow and permits suits for breach of contract. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). If the plaintiff pleads sufficient jurisdictional allegations to carry his burden under the Texas long-arm statute, "[t]he nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations." *Moki Mac*, 221 S.W.3d at 574. To negate specific jurisdiction, the defendant can challenge minimum contacts by denying any purposeful availment because "minimum contacts analysis requires purposeful availment." *See IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (citing *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)); *accord Toyo Seat Co. v. Garcia*, No. 04-07-00427-CV, 2008 WL 182505, at *3 (Tex. App.—San Antonio Jan. 23, 2008, no pet.) (mem. op.) (citing and following *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005)).

"Purposeful availment has at least three aspects." *IRA Resources*, 221 S.W.3d at 596; *accord Michiana*, 168 S.W.3d at 785. The analysis:

(1)     examines the defendant's, not the plaintiff's, forum-state contacts;

(2)     considers whether the defendant's contacts were "purposeful, not merely random, isolated, or fortuitous"; and

(3)     inquires as to whether the defendant sought the benefits or protections of the forum state laws such that the defendant impliedly consented to personal jurisdiction in the forum.

*IRA Resources*, 221 S.W.3d at 596; *accord Michiana*, 168 S.W.3d at 785.  Only the defendant's acts can trigger specific jurisdiction, not the "unilateral activity of another party or a third person."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *accord IRA Resources*, 221 S.W.3d at 596.

**ISSUE ON APPEAL**

On appeal, ICON argues the trial court's analysis (1) mistakenly focused on the SNJ-ASI agreement and (2) failed to properly interpret SNJ's many interactions with ICON as being purposefully directed into Texas and thus establishing minimum contacts.[2]  We disagree with ICON's assertion and interpretation.

**SNJ-ASI AGREEMENT**

In reviewing the order, we consider whether the Agreement establishes minimum contacts.  We find the *U-Anchor Advertising, Inc. v. Burt* case instructive.  *See U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760 (Tex. 1977).  Like the present case, Plaintiff U-Anchor, a Texas seller, sued an out-of-state buyer for breach of contract.  *Id.* at 761.  The contract was solicited, negotiated, and signed outside of Texas.  *Id.* at 763.  Defendant Burt purchased goods and services supplied by a Texas corporation for use in his home state.[3]  *Id.* at 762.  Burt did not seek "to extract profits from markets in Texas."  *Id.* at 764 (distinguishing a case on its facts and

---

[2] ICON did not assert Texas has general jurisdiction over SNJ either before the trial court or on appeal.  *Contra* TEX. R. APP. P. 38.1(h).  Therefore, we limit our jurisdictional analysis to specific jurisdiction.

[3] Unlike SNJ, Burt contracted with, and obtained the goods and services directly from, a Texas company.

suggesting extracting profits supports minimum contacts but mere purchasing for out-of-state delivery does not).

Unlike the SNJ-ASI Agreement, the *U-Anchor* contract was between the plaintiff and the defendant. Burt, the defendant buyer, knew he was directly contracting with a Texas seller. *U-Anchor*, 553 S.W.2d at 761. Burt also made at least six payments under the contract into Texas. *Id.* Yet, the Texas Supreme Court held Burt did not establish minimum contacts with Texas. *Id.* at 763. "Burt was a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single and fortuitous contact with Texas." *Id.* His contacts were "minimal and fortuitous" rather than "purposefully conducted" in Texas. *Id.*

Here, SNJ's contacts with ICON are even more fortuitous than those in *U-Anchor*. SNJ contracted with ASI, not ICON. SNJ made its payments into Arizona, not Texas. SNJ did not seek out ICON, and ICON admitted it was not identified anywhere in the Agreement. In fact, had ASI been able to answer SNJ's questions, SNJ might never have known of ICON. Following *U-Anchor*, we hold SNJ's contract with ASI did not establish minimum contacts in Texas.

## SNJ'S INTERACTION WITH ICON

ICON also faults the trial court's analysis for not interpreting SNJ's many interactions with ICON as being purposefully directed into Texas. ICON asserts SNJ's numerous contacts were "purposeful, rather than random, isolated[,] or fortuitous" and established minimum contacts. We disagree.

## A. Defendant SNJ's Forum State Contacts

Clearly, SNJ communicated with ICON via e-mail, telephone calls, and exchanges of data files. But mere communications may not be enough to establish minimum contacts.[4] SNJ's conduct must have been purposefully directed into Texas. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227–28 (Tex. 1991) (quoting *Burger King*, 471 U.S. at 472).

## B. Purposeful or Fortuitous Contacts

Nonresident buyers who "reach out" into a forum can establish minimum contacts. *E.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (entering into a multi-year franchise agreement with ongoing contacts); *Fleischer v. Coffey*, 270 S.W.3d 334 (Tex. App.—Dallas 2008, no pet.) (contracting for training a puppy in Texas and volunteering "to come down to Texas for a handling session" before picking up the puppy). However, where a third party's independent actions steer the defendant into the forum state, the defendant's contacts may be fortuitous rather than purposeful. For example, in *Johnson v. Kindred*, a trustee purchased real property in Texas for Johnson, the trust's beneficiary. *Johnson v. Kindred*, No. 05-07-01395-CV, 2008 WL 5177326, at *3 (Tex. App.—Dallas Dec. 11, 2008, no pet.). Kindred disputed the

---

[4] *See Michiana*, 168 S.W.3d at 789 (deciding that a nonresident recreational vehicle (RV) seller did not establish minimum contacts with Texas from a single RV sale initiated by a Texas buyer). In *Michiana*, the court addressed buyer-seller communications but refused to find minimum contacts for "a single conversation." But the court surely understood there were multiple buyer-seller communications concerning the vehicle sale because Michiana's brief states there were multiple telephone calls between Holten and Michiana. Brief of Petitioner-Appellant at 19, *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005) (No. 04-0016), 2004 WL 1561311 ("Michiana spoke with Respondent via telephone . . . . Petitioner's subsequent conversations were only to finalize the terms of the purchase agreement."). Other Texas courts have also decided that multiple communications did not establish minimum contacts. *E.g.*, *Bergenholtz v. Cannata*, 200 S.W.3d 287, 295 (Tex. App.—Dallas 2006, no pet.) (refusing to find purposeful availment where a California attorney sued for legal malpractice by a Texas client over a California case "did not involve any contacts with Texas other than communications about the California lawsuit and payment of fees"); *Myers v. Emery*, 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ) (deciding, in a legal malpractice case where the law firm advertised in a legal directory but where the client found the firm through a referral and not the directory, that the out-of-state defendant-lawyer's long-distance telephone calls and postal service mail directed into Texas to communicate with the Texas plaintiff-client "were minimal and fortuitous and were not a result of [the lawyer's] purposefully conducted activities within the State").

property's ownership and sued Johnson. *Id.* at *1. Johnson testified he was a passive investor and the trustee, not Johnson, decided what property to purchase. *Id.* at *3–4. The court agreed: "Johnson [merely] invested money with a trustee in California who decided unilaterally to invest the trust funds in Texas real estate." *Id.* at *6. The court concluded that Johnson's contact with Texas "was . . . fortuitous rather than purposeful." *Id.* at *5.

Similarly, SNJ's contacts were fortuitous not purposeful. First, SNJ chose to purchase metal buildings from ASI, not from ICON. SNJ did not direct ASI to use ICON; it was ASI that unilaterally chose ICON and initially refrained from disclosing ICON's role to SNJ. SNJ did not know of, or contact, ICON until directed to do so by ASI. *See Burger King*, 471 U.S. at 475–76 (contrasting circumstances based on "the unilateral activity of another party or a third person" with those "where the defendant 'deliberately' has engaged in significant activities" in the forum (citation omitted)); *IRA Resources*, 221 S.W.3d at 596. ASI could have chosen a supplier from any forum, and ASI's choice of a Texas supplier was simply fortuitous. *See Johnson*, 2008 WL 5177326, at *6.

## C. Seeking Benefits and Protections of Forum Laws

Moreover, SNJ did not seek the benefits and protections of Texas laws. *See Michiana*, 168 S.W.3d at 785. SNJ chose ASI, an Arizona company, as its provider. SNJ looked to ASI to meet the terms of the agreement. SNJ agreed to: (1) litigate any disputes in Arizona, (2) accept service through the Arizona Secretary of State, and (3) have the contract terms governed and enforced under Arizona state law. *See Michiana*, 168 S.W.3d at 792 ("[I]nsertion of a clause designating a foreign forum suggests that no local availment was intended."). SNJ could foresee litigation in Arizona, but not in Texas. *See BMC Software*, 83 S.W.3d at 795 ("[F]oreseeability

is an important consideration in deciding whether the nonresident defendant has purposefully established 'minimum contacts' with the forum state.").

SNJ successfully negated the purposeful availment aspect of specific jurisdiction and did not establish minimum contacts in Texas. Thus, we need not address whether exercising personal jurisdiction over SNJ would comport with traditional notions of fair play and substantial justice. *See Guardian Royal Exchange*, 815 S.W.2d at 228.

## CONCLUSION

We hold that neither SNJ's contract with ASI nor its communications with ICON met the "purposeful availment" required to establish minimum contacts. Therefore, SNJ met its burden of negating all the bases of jurisdiction that ICON alleged. *See Moki Mac*, 221 S.W.3d at 574. Accordingly, we affirm the order of the trial court sustaining SNJ's special appearance and dismissing ICON's suit.

Rebecca Simmons, Justice