## Fourth Court of Appeals
### San Antonio, Texas



## MEMORANDUM OPINION

No. 04-22-00666-CV

Javier **GARZA**, David Macdonald, Albert Macdonald, and Dana M. Brittenham, in their
individual capacities and their capacities as trustees of the Teresa Garza Trust,
Appellants

v.

Joel **ANDERSON**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2022CVK000509D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: August 9, 2023

AFFIRMED

This appeal comes before this court after the trial court dismissed appellants'[1] case for lack

of personal jurisdiction over appellee Joel Anderson. We affirm.

### BACKGROUND

Appellants are trustees of the Teresa Garza Trust. According to appellants, they suffered

damages in 2021 due to appellee Joel Anderson's violations of the Texas Debt Collection Act

---

[1] Appellants are Javier Garza, David Macdonald, Albert Macdonald, and Dana M. Brittenham, in both their individual
capacities and their capacities as trustees of the Teresa Garza Trust.

("TDCA"), which prohibits, among other things, misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding.

***The Origin of the Debt and Dispute***

The underlying dispute arose in Washington between Anderson and Ernest M. Edsel. Edsel is both personally involved in the origin of the underlying dispute and appellants' attorney in this proceeding.

On November 29, 2017, Edsel hired Anderson Construction NW ("Anderson Construction"), a Washington company, to perform a remodeling project on Edsel's residence at 307 East 30th Street, Bremerton, Washington (the "Edsel Residence"). Anderson jointly operates Anderson Construction with his wife. After Anderson Construction completed the project, Edsel refused to pay the final installment. Anderson Construction and Anderson sued Edsel in Washington state court for the remaining amount. After prevailing in both an arbitration and a subsequent jury trial, Anderson obtained a May 16, 2022 judgment against Edsel in the amount of $19,162.25 in principal; $6,680.10 in pre-judgment interest; $52,023.94 in attorney's fees; $721.68 in costs; and post-judgment interest between ten and twelve percent.

In the same lawsuit, Anderson also sued and obtained a default judgment against Sandhurst Corp., a Delaware corporation, for fraudulent transfer. At the time Edsel contracted with Anderson Construction, Sandhurst Corp. was reflected in real property records as the nominal owner of the Edsel Residence, but on October 29, 2019, Sandhurst Corp. granted and conveyed the Edsel Residence by statutory warranty deed to Felton James, LLC, a Wyoming limited liability company. On August 8, 2021, Anderson and Anderson Construction filed a lis pendens against the Edsel Residence in the real property records of Kitsap County, Washington. Edsel, on his own behalf,

later filed a lawsuit in Dallas County, Texas, against various parties, including Anderson and persons related to the Codan Trusts.

*Appellants' Allegations*

Appellants' involvement, in their capacity as trustees, allegedly began several years after the underlying dispute. Specifically, appellants allege: On or about August 23, 2021, they were in the process of clearing and settling their trustee accounts with The Codan Trust Company and The Codan Trust Company, Ltd. (the "Codan Trusts") with respect to a series of complex security trades. As part of the process, the Codan Trusts gather and disseminate credit and financial responsibility information while monitoring the creditworthiness of clients (including appellants). During the August 2021 settlement, the Codan Trusts required appellants to provide additional collateral because of demands made by independent third parties. The demands for additional collateral allegedly arose because of a "Credit Watch" report circulated by the Codan Trusts. The Credit Watch identified multiple creditors, including Anderson, on a claim for debt in the amount of $253,540. On September 1, 2021, appellants allege they were required to pay $50,000 to the trust estate to fund the September monthly trust distribution because of the Codan Trusts' additional collateral demands. The additional collateral demands allegedly rendered the Teresa Garza Trust incapable of making its monthly distribution absent appellants' contribution.

The essence of appellants' complaint is this: Anderson's claimed debt resulted in (1) a German bank (2) combining public information with private, proprietary information[2] (3) to create and circulate to the Codan Trusts (4) a "Credit Watch" report reflecting appellants' unfavorable credit risk rating, (5) requiring appellants, as trustees, to (a) submit additional capital to the Codan

---

[2] The German bank collected information from public, deed, and real property records in Washington; court records in Washington; and various financial entities in Germany, Switzerland, Luxembourg, and Belgium.

Trusts, and, (b) given insufficient trust assets, subsequently personally fund (at $12,500 each) the Teresa Garza Trust's monthly distribution of $50,000.

***Procedural History***

On April 22, 2022, appellants filed their original petition against Anderson in this lawsuit in Webb County, Texas. Edsel is appellants' attorney in this proceeding. On May 31, 2022, Anderson filed a verified "Special Appearance Per TRCP 120a and Subject to the Court's Ruling Thereon, Original Answer." On June 23, 2022, Anderson filed a "Supplement to His Special Appearance per TRCP 120a."

Anderson's supplement included, among other things, an affidavit attesting to facts relevant to his special appearance. In his affidavit, Anderson swore: (1) he has never resided in Texas; (2) along with his wife, he operates Anderson Construction in Kitsap County, Washington, and Anderson Construction has never conducted business in Texas, does not advertise in Texas, and has never contracted with a resident of Texas; (3) the contract with Edsel was wholly negotiated in Washington, was executed in Washington, was entered into between Washington residents, and concerned a construction project in Washington at the Edsel Residence; (4) it is unclear to Anderson what, if any, involvement appellants had in the Edsel Residence; and (5) Anderson has never conducted any activity to purposefully avail himself of Texas laws or jurisdiction.

Anderson's special appearance and supplement were filed more than seven days before the July 5, 2022 hearing on Anderson's special appearance.[3] The trial court granted Anderson's special appearance and dismissed appellants' case. This appeal followed.

---

[3] Appellants served additional affidavits the day of the hearing. Because they were not timely served, the trial court did not consider them, and we do not consider them in this appeal. *See* TEX. R. CIV. P. 120a(3) (requiring affidavits to be served at least seven days before a hearing on special appearance).

**SPECIFIC JURISDICTION**

In their first issue, appellants assert the trial court erred in concluding it lacked specific personal jurisdiction over Anderson.

*Standard of Review*

We review a trial court's determination of a special appearance de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Appellants, as the plaintiffs, had the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Id.* As the nonresident defendant, Anderson then assumed the burden of negating all bases of jurisdiction in those allegations. *Id.* When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer "all facts necessary to support the judgment and supported by the evidence." *Id.*

*Applicable Law*

The Texas long-arm statute authorizes personal jurisdiction over a nonresident defendant who "does business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. However, "the statute's broad, doing-business language reaches only as far as these federal due-process criteria permit: (1) the defendant must have established minimum contacts with the forum state, and (2) the assertion of jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (citation omitted).

The minimum contacts analysis requires purposeful availment: "some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citation omitted) (emphasis in original). Purposeful availment has at least three aspects. *Id.* "First, only the defendant's forum-state contacts matter, not anyone else's." *Id.* "Second, the contacts must be purposeful, not merely random,

isolated, or fortuitous." *Id.* "Third, a nonresident defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction, thus impliedly consenting to its laws." *Id.*

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction. *Moki Mac River*, 221 S.W.3d at 575. Here, only one—specific jurisdiction—is at issue. When specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Id.* at 575–76. Specific jurisdiction is established if the defendant's alleged liability "arises out of or is related to" an activity conducted within the forum. *Id.* at 576. Specific jurisdiction is based on whether the defendant's activities in the forum state themselves "give rise to the liabilities sued on." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). Thus, specific jurisdiction has two components: (1) the purposeful availment inquiry and (2) the nexus between the nonresident defendant, the litigation, and the forum. *See Moki Mac River*, 221 S.W.3d at 576.

The "arise from or relate to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum. *Id.* at 579. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585. Thus, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," and the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014). A defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. *Id.* at 286. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (citation omitted).

*Analysis*

Although appellants argue jurisdiction over Anderson pursuant to a host of Texas statutes, we need not consider these arguments because the Texas long-arm statute applies to the full extent permissible under the United States Constitution. *Griego*, 221 S.W.3d at 596. Therefore, we apply well-settled federal law.

Our minimum-contacts analysis focuses on the relationship among Anderson; Texas; and the underlying facts giving rise to the litigation. *Id.* at 575–76. Specific jurisdiction is established if Anderson's alleged liability to appellants "arises out of or is related to" an activity conducted within Texas. *Id.* at 576. But the facts and evidence conclusively establish Anderson conducted no activity in Texas relating to this lawsuit at all. Instead, Anderson, through his company, performed a residential remodel on the Edsel Residence in Washington; filed suit against Edsel in Washington; and filed a lis pendens in Washington real property records.

Even the "Credit Watch" report identified in appellants' pleadings as the genesis of the underlying dispute was not created or distributed by Anderson—it was created by a German bank that collected information from public, deed, and real property records in Washington; court records in Washington; and various financial entities in Germany, Switzerland, Luxembourg, and Belgium. That appellants happen to be located in Texas and act as trustees of a Texas trust whose creditworthiness was negatively affected by the German bank's "Credit Watch" report is flagrantly insufficient to satisfy the minimum contacts required to hale Anderson into a Texas court. Rather, appellants allege nothing more than attenuated contacts arising from a complex and opaque web of trust and entity relationships between appellants, Edsel, and unrelated third parties. *See Walden*, 571 U.S. 277 at 286 ("Due process requires that a defendant be haled into court in a forum State *based on his own affiliation with the State, not* based on the "random, fortuitous, or *attenuated*" *contacts he makes by interacting with other persons affiliated with the State*.") (emphasis added).

Moreover, nothing in the record suggests Anderson purposefully availed himself of the privilege of conducting activities in Texas. *See Griego*, 221 S.W.3d at 596. As concerns the underlying litigation, the evidence instead confirms the utter absence of a relationship between Anderson and Texas. *See id.*

Applying the appropriate standard of review, we hold appellants failed to meet their initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. Even if appellants had met their initial burden, the evidence presented by Anderson conclusively negates any jurisdictional basis. We overrule appellants' first issue.

**PROCEDURAL CHALLENGE**

In their second issue on appeal, appellants assert Anderson failed to file a sworn "motion" for his special appearance, resulting in a general appearance.

### *Applicable Law*

A special appearance must be made by sworn motion. *See* TEX. R. CIV. P. 120a(1). However, a special appearance "may be amended to cure defects." *Id.* "The rule does not limit the kinds of defects that can be cured." *Dawson-Austin v. Austin*, 968 S.W.2d 319, 321 (Tex. 1998). Even an unsworn special appearance may be cured and does not constitute a general appearance. *Id.* at 321–22.

### *Analysis*

It cannot be seriously contested that Anderson in fact filed a sworn special appearance; nevertheless, appellants assert that Anderson's special appearance is not a "motion" and, being non-compliant with Rule 120a(1), therefore constitutes a general appearance.

We reject appellants' argument. It is well-settled that we look to the substance of Anderson's special appearance, not whether it is entitled a "motion." *See* TEX. R. CIV. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires,

shall treat the plea or pleading as if it had been properly designated."); *see also, e.g.*, *Hodge v. Smith*, 856 S.W.2d 212, 214 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The titles of the pleadings and other court documents are not controlling. We are to look at the substance of the pleadings and proceedings to determine what actually occurred."); *In re Estate of Blankenship*, No. 04-08-00043-CV, 2009 WL 1232325, at *3 (Tex. App.—San Antonio May 6, 2009, pet. denied) ("Appellate decisions should 'turn on substance rather than procedural technicality.' In our review, we 'look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it.' A pleading's style does not control over its substance and purpose.").

Anderson's sworn special appearance (1) sets forth facts and argument; (2) cites relevant authorities; and (3) requests as relief that the trial court "sustain its special appearance and dismiss [Anderson] from this suit for want of jurisdiction." It facially constitutes a sworn motion compliant with Rule 120a(1). We overrule appellants' second issue.

**CONCLUSION**

Having overruled appellants' issues on appeal, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice
