COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

                                           NO.
 2-08-009-CV

 

GLENCOE CAPITAL PARTNERS II, L.P.,                                 APPELLANTS

TERENCE
S. MALONE, LOUIS J. MANETTI,

RICHARD
A. COONROD, DAVID S. EVANS, AND

RONALD
D. WRAY

 

                                                      V.

 

HAROLD GERNSBACHER, REUBEN N. PALM,                           APPELLEES

MICHAEL
N. PALM, SHANNON PALM, JAMES G.

PALM,
SUSAN PALM, MARK R. PALM, PAMELA

PALM,
THOMAS L. PALM, MAUREEN PALM,

RICHARD
F. PALM, KRISTIN PALM, ROBERT N.

ZINTGRAFF,
AND ZINTGRAFF INVESTMENTS, LTD.

(BY
ZINTGRAFF MANAGEMENT TRUST AND

ROBERT
N. ZINTGRAFF, TRUSTEE)

 

                                                  ------------

 

             FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

In this interlocutory appeal,
Appellants challenge the trial court=s order overruling their special appearances.  We affirm.








I.       Background

This case arises from a
series of complex transactions involving the acquisition and financing of
several food service equipment supply companies.  Following are the allegations and
jurisdictional facts relevant to this appeal.

A.            
Appellees=
Allegations

AppelleesCGernsbacher, Zintgraff, and the PalmsCare former shareholders in what were independent food service
equipment supply companies.  Gernsbacher,
a Texas resident, was a shareholder in Gernsbacher=s, Inc., a Texas corporation based in Fort Worth.  Zintgraff, also a Texas resident, was a
shareholder in Top of the Table, Inc., a Texas corporation based in San
Antonio.  The Palms, all Minnesota
residents, were shareholders in Palm Brothers, Inc., a corporation based in
Minnesota.








In 2000, Strategic Equipment
and Supply Corporation (ASESC@), a Delaware corporation with its corporate offices in Arizona before
2001 and in Dallas after, acquired Gernsbacher=s, Top of the Table, Palm Brothers, and other food service equipment
supply companies.  Appellant Glencoe
Partners II, L.P. (AGlencoe@), whose general partner resides in Illinois, was SESC=s majority shareholder.  An
investment group led by Glencoe financed SESC=s acquisition of the companies, and LaSalle Bank and others provided
additional financing.  Gernsbacher,
Zintgraff, and the Palms received a collective total of $8.2 million in SESC
stock plus notes made by SESC in the original aggregate amount of $9.5 million
(Athe Shareholder Notes@). 

After the acquisitions, SESC=s nine-member board of directors consisted of three Glencoe employees,
including Appellant Wray (an Illinois resident); three members of the AGlencoe Executive Network@ (a group of senior executives pooled by Glencoe to serve at Glencoe=s pleasure on the boards of Glencoe-controlled companies), including
Appellants Malone (a Michigan resident) and Coonrod (a Minnesota
resident);  and three former shareholders
of the acquired companies, namely, Gernsbacher, Zintgraff, and Mike Palm.[1]  Gernsbacher and Zintgraff continued to run
their respective Adivisions@ of SESC from their offices in Fort Worth and San Antonio. 








SESC failed to perform as
well as expected.  Appellants represented
to Appellees in September 2001 that LaSalle Bank had demanded an immediate
additional equity investment of $6 million as a condition of maintaining its
relationship with SESC.  Appellants
decided to raise the equity investment through the sale of additional notes (Athe New Notes@).  The events surrounding the issuance of the
New Notes lie at the heart of Appellees= claims. 

Glencoe enlisted a Chicago
investment banking firm, Lincoln Partners, to prepare a Afairness opinion@ concerning
the fairness of the New Notes transaction to SESC=s shareholders.  Appellees
allege that Lincoln had extensive ties to Glencoe and was not independent and
impartial, despite Lincoln=s assertions to the contrary. 
Lincoln furnished three fairness opinions to SESC shareholders in
November and December 2001. 








Appellees contend that
Appellants orally misrepresented the nature and effect of the New Notes in
multiple SESC board meetings, in which Gernsbacher and Zintgraff participated
by telephone from Texas, and that Appellants and Lincoln misrepresented the
terms of the New Notes in writings, including the fairness opinions, that
Appellants and Lincoln mailed to Gernsbacher and Zintgraff in Texas.  Appellees allege that, among other things,
Appellants represented that the New Notes would be paid if SESC sold all of its
assets.  They further allege that
Appellants later secretly changed the terms of the New Notes to make them payable
in the event of a sale only if 80% or more of the holders of the New Notes
approved payment.  Gernsbacher and
Zintgraff eventually purchased a total of $275,000 worth of the New Notes when
the notes were issued in March 2002. 
Glencoe purchased or controlled 80% of the New Notes.  

SESC sold all of its
operating assets to SESC Acquisition, Inc. in 2005.  SESC paid nothing to Gernsbacher, Zintgraff,
and the Palms on the Shareholder Notes, and it paid nothing to Gernsbacher and
Zintgraff on the New Notes. 

Appellees sued Appellants and
others in Tarrant County, Texas, alleging causes of action for breach of
fiduciary duties, fraud, and violation of the fraudulent transfers act.  The gist of their allegations is that Appellants
colluded to render worthless the SESC stock and notes held by Appellees.  Appellees seek actual damages, exemplary
damages, and recession of the New Notes.

B.             
Special Appearances








Appellants filed special appearances, see Tex. R. Civ. P. 120a,
and each individual Appellant filed a supporting affidavit.  In his affidavit, Coonrod stated that he had
participated in several SESC board meetings between August 2001 and February
2002; Gernsbacher and Zintgraff participated by telephone in several of the
board meetings; Coonrod did not know the locations from which either
Gernsbacher or Zintgraff participated in the telephonic meetings; he never
telephoned Gernsbacher or Zintgraff for any SESC board meeting; he did not
draft documents related to the New Notes; and he did not mail any documents
related to the New Notes to Gernsbacher or Zintgraff.  Malone=s, Manetti=s, Wray=s, and Evans=s affidavits
recite the same essential averments as Coonrod=s, except Malone=s explains
that he served as chairman of SESC=s board from January 2000 until early 2005 and stated that while he
did draft a letter concerning the New Notes that was sent to all SESC
shareholders in January 2002, he did not draft or prepare other materials
related to the New Notes. 

Appellants also submitted the
affidavit of Beth A. Satterfield, Glencoe Capital=s CFO and COO and SESC=s former assistant secretary. 
She stated that prior to each SESC board meeting, a toll-free telephone
number was circulated to the potential participants, including Gernsbacher and
Zintgraff, so that they could call into the meeting.  








Gernsbacher testified at the
hearing on the special appearances.  He
said that after SESC acquired Gernsbacher=s, Inc., he continued to work at Gernsbacher=s as a division of SESC and served as an SESC director.  He testified that he participated in SESC board
meetings telephonically.  When asked
whether he was in Texas during the meetings, he testified that he Apresume[d] [he] was in Texas . . . that=s where [he] normally [was].@  He further testified that Anormally [the directors] had a few minutes where [they would] talk
before the meetings, and [they] would discuss where people were and what they
were doing.@  Gernsbacher said that Appellants made
misrepresentations during these meetings concerning the state of SESC and the
New Notes transaction. 

Zintgraff testified via
affidavit.  He averred that all
individual Appellants were fully aware that both Top of the Table and
Gernsbacher=s,  Inc. were located in Texas and had their
principal offices in Texas and that both Gernsbacher and Zintgraff were Texas
residents.  Zintgraff described in detail
a series of board meetings between October 2001 and February 2002, in which he
participated by telephone from his San Antonio office.  He stated that during the meetings, each of
the individual Appellants misrepresented SESC=s financial condition and the supposedly urgent need for new capital
at the insistence of La Salle.  Zintgraff
averred that the individual Appellants either made misrepresentations, failed
to correct misrepresentations, or directed his attention to written
misrepresentations concerning the New Notes during phone conferences in which
he participated from Texas.   

On December 21, 2007, the
trial court denied all of Appellants= special appearances.  This
appeal followed.

II.      Discussion








Appellants argue that the
trial court erred by denying their special appearances (1) because there is
legally and factually insufficient evidence that they purposefully availed
themselves of the privilege of conducting activities in Texas and Appellees= claims do not arise out of any contacts Appellants may have made with
Texas, and (2) because the exercise of personal jurisdiction does not comport
with the due process requirements of fair play and substantial justice.[2]  

C.            
Burden of Pleading and
Standard of Review








The plaintiff bears the
initial burden of pleading sufficient allegations to bring a nonresident
defendant within the provisions of the Texas long‑arm statute.  Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007); BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002); TravelJungle v. Am. Airlines, Inc., 212
S.W.3d 841, 845 (Tex. App.CFort Worth 2006, no pet.); Michel v. Rocket Eng=g Corp., 45 S.W.3d 658, 668 (Tex.
App.CFort Worth 2001, no pet.).  Upon
filing a special appearance, the nonresident defendant assumes the burden of
negating all bases of personal jurisdiction alleged by the plaintiff.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002), cert. denied, 537 U.S. 1191
(2003).  In other words, the defendant
must disprove the existence of minimum contacts sufficient to establish
personal jurisdiction over itCgeneral, specific, or bothCas alleged by the plaintiff. 
See id.  Absent allegations of
any specific, purposeful act through which the defendant can be said to have
sought a benefit by availing itself of the jurisdiction, evidence that a
defendant is a nonresident is sufficient to meet its burden.  Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d
777, 785 (Tex. 2005); see also Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 633 (Tex. App.CDallas 1993, writ denied).








Whether a trial court has
personal jurisdiction over a defendant is a question of law.  Marchand, 83 S.W.3d at 793; TravelJungle,
212 S.W.3d at 845.  However, the trial
court must frequently resolve fact questions before deciding the jurisdictional
question.  Marchand, 83
S.W.3d at 794.   When the trial court
does not enter express findings of fact and conclusions of law regarding its
ruling on a special appearance, the reviewing court infers all fact findings
necessary to support the judgment that are supported by the evidence.  Id. at 794B95.  When the appellate record
includes the reporter=s and clerk=s records, these implied findings are not conclusive and may be
challenged for legal and factual sufficiency in the appropriate appellate
court.  See id. at 795; TravelJungle,
212 S.W.3d at 845; Michel, 45 S.W.3d at 668.  If the reviewing court determines that the
trial court=s findings
are supported by sufficient evidence, or if the material facts are undisputed,
the reviewing court decides as a matter of law whether those facts negate all
bases for personal jurisdiction.  Marchand,
83 S.W.3d at 794B95.

D.             
Specific Jurisdiction 

The Texas long‑arm statute authorizes
personal jurisdiction over a nonresident defendant who Adoes
business@ in
Texas, which specifically includes committing a tort in Texas, in whole or in
part.  Tex. Civ.
Prac. & Rem. Code Ann. ' 17.042(1)
(Vernon 2008); TravelJungle, 212 S.W.3d at 845.  But the statute=s broad, doing‑business language reaches only as far as federal
due‑process criteria permit; the defendant must have established minimum
contacts with the forum state, and the assertion of jurisdiction must comport
with Atraditional notions of fair play and substantial justice.@  IRA Res., Inc. v. Griego,
221 S.W.3d 592, 596 (Tex. 2007) (citing Marchand, 83 S.W.3d at 795); see
also Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). 

1.              
Minimum Contacts








When a plaintiff asserts
specific jurisdiction, the minimum contacts analysis focuses on the
relationship between the defendant, the forum, and the litigation.  IRA Res., 221 S.W.3d at 596; Moki
Mac, 221 S.W.3d at 575B76. Minimum contacts are sufficient for personal jurisdiction when the
nonresident defendant Apurposefully
avails@ itself of the privilege of conducting activities within the forum
state, thus invoking the benefits and protections of its laws.  Hanson v. Denckla, 357 U.S. 235, 253,
78 S. Ct. 1228, 1240 (1958); IRA Res., 221 S.W.3d at 596; Michiana,
168 S.W.3d at 784.  Purposeful availment
is the Atouchstone of jurisdictional due process.@  IRA Res., 221
S.W.3d at 596; Michiana, 168 S.W.3d at 784.

Purposeful availment has at
least three aspects.   IRA Res.,
221 S.W.3d at 596; Michiana, 168 S.W.3d at 785.  First, only the defendant=s contacts with the forum are relevant, not the unilateral activity of
another party or third person.  IRA
Res., 221 S.W.3d at 596; Michiana, 168 S.W.3d at 785.  Second, the contacts relied upon must be
purposeful rather than random, isolated, or fortuitous.  IRA Res., 221 S.W.3d at 596; Michiana,
168 S.W.3d at 785.  Third, the defendant
must seek some benefit, advantage, or profit by Aavailing@ itself of
the jurisdiction, thus impliedly consenting to its laws.  IRA Res., 221 S.W.3d at 596; Michiana,
168 S.W.3d at 785. 

In this case, the principal
contacts between Appellants and Texas relevant to specific jurisdiction are the
telephonic board meetings, in which Gernsbacher and Zintgraff participated from
Texas and during which Appellants allegedly made misrepresentations regarding
SESC=s financial condition and the terms of the New Notes.  We must, therefore, determine whether the
telephonic board meetings rise to the level of purposeful availment.













Although the supreme court
has disapproved Aopinions
holding that . . . specific jurisdiction is necessarily established by
allegations or evidence that a nonresident committed a tort in a telephone call
from a Texas number,@ Michiana,
168 S.W.3d at 791B92 (emphasis
added), it has not held that telephone calls are never sufficient to
establish minimum contacts.  In Michiana,
a Texas resident attempted to sue an Indiana seller of motor homes in a Texas
court, asserting as the basis for specific jurisdiction misrepresentations the
seller allegedly made during a single phone call initiated by the Texas
resident.  Id. at 784.  The supreme court noted that Achanges in technology have made reliance on phone calls obsolete as
proof of purposeful availment.@  Id. at 791.  The phone call in Michiana satisfied none
of the three key aspects of purposeful availment: the seller=s contact with Texas resulted not from its own activity but from the
Texas resident=s unilateral
activity, namely, the phone call initiated by the Texas resident; the seller=s contact with Texas was not purposeful but isolated and fortuitous;
and the seller did not Aavail@ itself of the privilege of doing business in Texas.  See id. at 785.  But while the seller=s sole telephonic contact with Texas fell short of purposeful
availment, the supreme court=s use of the modifier Anecessarily@ in its
disapproval of Aopinions
holding that . . . specific jurisdiction is necessarily established by
allegations or evidence that a nonresident committed a tort in a telephone call
from a Texas number@ suggests
that telephonic contact may rise to the level of purposeful availment in
different circumstances.  See id.
at 791B92.

The circumstances of this
case are markedly different from the single, unsolicited, unilateral phone call
in Michiana.  Instead of Michiana=s single phone call, this case involves
many telephonic board meetings at regular intervals over a span of yearsCeven if we limit the scope of relevant contacts to those in 2001 and
2002 when the parties discussed the New Notes, as Appellants argue we
must.  Unlike the seller in Michiana,
who did not advertise or otherwise seek business from Texas residents,
Appellants (according to Appellees= petition) sought to induce Texas residentsCGernsbacher and ZintgraffCto subscribe to the New Notes.








One similarity between Michiana
and this caseCa similarity
that Appellants argue negates specific jurisdictionCis that neither the seller in Michiana nor the Appellants in
this case placed phone calls to Texas. 
In Michiana, the Texas resident placed the call to the seller in
Indiana.  Id. at 781.  In this case, SESC circulated a toll-free
phone number to the board members before the board meetings, and the board
members would call that number to participate in the meeting.  Appellants averred in their
special-appearance affidavits that they did not know where Zintgraff and
Gernsbacher were during the telephonic board meetings, and Gernsbacher conceded
that he could have phoned into the meetings from any state. 

But again, the differences
between this case and Michiana outweigh the similarities.  Unlike the one-time, unsolicited, fortuitous
transaction between the seller and the Texas resident in Michiana,
Appellants had a long-time, ongoing relationship with Gernsbacher and
Zintgraff, whom they knew to be Texas residents and whom they knew operated the
Fort Worth and San Antonio divisions of SESC. 
See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 470, 105 S. Ct.
2174, 2181 (1985) (noting long-term relationship between Florida franchisor and
Michigan franchisee as significant factor in subjecting franchisee to Florida
jurisdiction).  Moreover, to the extent
that it makes a difference whether Appellants knew where Gernsbacher and
Zintgraff were during the board meetings, the record contains evidence showing
that they did know that Gernsbacher and Zintgraff called into the
meetings from Texas.  Zintgraff testified
that he always participated in the meetings from his San Antonio office;
Gernsbacher testified that he participated from his Fort Worth office most of
the time; and Gernsbacher testified that Anormally [the board] had a few minutes where [they would] talk before
the meetings, and [they] would talk about where people were and what they were
doing.@ 








Even if Appellants did not
know that Gernsbacher and Zintgraff participated in the meetings from Texas,
that ignorance alone is not enough to negate specific jurisdiction because it
was foreseeable that their activity directed towards Texas residents would
subject them to Texas jurisdiction.  In TravelJungle,
we held that the foreign defendant, TravelJungle, purposefully availed itself
of the privilege of conducting activity in Texas by accessing the American
Airline=s computer servers in Texas via the Internet even though TravelJungle
claimed that it did not know where American=s servers were located: ABy deliberately directing its activity toward AA.com, TravelJungle
should have been aware of the possibility that it would be haled into any forum
where AA.com=s servers
were located.@  212 S.W.3d at 841, 850, 851.  Likewise, by deliberately directing their
activity toward Gernsbacher and ZintgraffCwhom they knew to be Texas residentsCAppellants should have been aware of the possibility that they would
be subject to Texas jurisdiction, even if they did not know where Gernsbacher
and Zintgraff were at the precise moments that Appellants allegedly made
misrepresentations during the telephonic board meetings.








The phrase Adirecting their activity@ leads us to a key part of Appellants= argument.  Appellants argue
that the basis for jurisdiction asserted by Appellees is that Appellants Adirected a tort@ at the two
Texas plaintiffsCa theory of
specific jurisdiction that the supreme court rejected in Michiana.  In Michiana, the supreme court noted
that directed-a-tort jurisdictionCthat is, jurisdiction based on where the effect of a defendant=s tort is feltCcauses
several problems.  168 S.W.3d at
790.  First, it shifts the court=s focus from the relationship among the defendant, the forum,
and the litigation to the relationship among the plaintiff, the forum,
and the litigation.  Id.  Second, it confuses the roles of judge and
jury by equating the jurisdictional inquiry with the underlying merits; in
other words, it shifts the analysis from contacts to culpability.  Id. at 790B91.  Third, directed-a-tort
jurisdiction shifts the focus from the defendant=s contacts to the type of claim asserted by the plaintiff; for
example, a defendant might be subject to jurisdiction by directing a tort at
the forum but not be subject to jurisdiction for a contract claim arising from
the same facts.  Id. at 791.  And finallyCas we have already notedCthe supreme court observed that changes in technology have made
reliance on phone calls obsolete as proof of purposeful availment (though, as
we have also noted, it did not hold that phone calls can never be proof
of purposeful availment).  Id.  Ultimately, the court rejected the notion
that Aspecific jurisdiction turns on whether a defendant=s contacts were tortious rather than
the contacts themselves.@  Id. at 792.  (emphasis added).








In this case, we have focused
our jurisdictional analysis on Appellants= contacts with Texas, not whether those contacts were tortious.  Thus, while Appellants= observation that the supreme court has rejected directed-a-tort
jurisdiction is true, it does not unhinge our analysis.

In sum, we conclude that
Appellants=
participation in the telephonic board meetings satisfies the three key aspects
of purposeful availment.  See IRA Res.,
221 S.W.3d at 596; Michiana, 168 S.W.3d at 785.  Appellants= participation in the board meetings was not the unilateral activity
of another party or a third person; the meetings were purposeful rather than
random, isolated, or fortuitous; and Appellants sought some benefit or
advantage by availing themselves of Texas jurisdiction, namely, Gernsbacher=s and Zintgraff=s
subscription to the New Notes.  We
therefore hold that the evidence is legally and factually sufficient to support
the trial court=s conclusion
that Appellants availed themselves of the privilege of doing business in Texas.

2.              
Substantial Connection








But purposeful availment
alone will not support an exercise of specific jurisdiction.  Moki Mac, 221 S.W.3d at 579.  For specific‑jurisdiction purposes, purposeful
availment has no jurisdictional relevance unless the defendant's liability
arises from or relates to the forum contacts. 
Id.  There must be a
substantial connection between the defendant=s forum contacts and the operative facts of the litigation.  Id. at 584.

In Moki Mac, the
supreme court looked to the factual issues that it anticipated would be the
primary focus at trial to determine whether the plaintiffs= misrepresentation claims arose from or related to Moki Mac=s purposeful solicitation of Texas customers.  Id. 
The Aoperative
facts@ of the plaintiff=s suit in Moki Mac concerned a tour guide=s conduct on a hiking 
expedition in Arizona and whether the guide exercised reasonable care in
supervising the plaintiff=s son, who
died during the hike.  Id. at 585.
 The court reasoned that it was the
events on the trail and the guide=s supervision of the hike that would be the focus of the trial and
would serve as the overwhelming majority of the evidence presented at trial,
not the representations by Moki Mac in its literature to the plaintiffs.  Id. 
Only after thoroughly considering the manner in which the hike was
conducted would the jury then assess the plaintiff=s misrepresentation claim.  Id. 
The court concluded that A[w]hatever connection there may be between Moki Mac=s promotional materials sent to Texas and the operative facts that led
to [the son=s] death, we
do not believe it is sufficiently direct to meet due‑process concerns.@  Id. 








Here, in contrast to Moki
Mac, Appellants= contacts
with Texas that show purposeful availmentCthe telephonic board meetingsCare also the operative facts of the litigation.  The primary focus at trial will be on the
alleged misrepresentations Appellants made during the board meetings.  Unlike the misrepresentations in Moki Mac,
which were tangential to the plaintiffs= core negligence claim, Appellants= misrepresentations in this case are the core of Appellees= claims.  Appellants= liability, if any, arises directly from and relates to their contacts
with Texas.  We therefore hold that there
is a substantial connection between Appellants= forum contacts and the operative facts of the litigation.  See id. at 584.

Having concluded that
Appellants purposefully availed themselves of the forum and that there is a
substantial connection between their forum contacts and the operative facts of
the litigation, we hold that the evidence was legally and factually sufficient
to support the trial court=s conclusion that Appellants have minimum contacts with Texas
sufficient to allow the exercise of specific jurisdiction over them.

E.              
Fair Play and Substantial Justice








We now turn to whether the exercise of personal
jurisdiction over Appellants comports with traditional notions of fair play and
substantial justice.  See Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991). 
In making this determination, we consider the following factors: (1) the
burden on the defendants; (2) the interests of the forum state in adjudicating
the dispute; (3) the plaintiff=s interest in obtaining convenient and effective relief; (4) the
interstate judicial system=s interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering
fundamental, substantive social policies. 
See id. at 228; see also Asahi Metal Indus. Co. v. Superior
Court of Ca., 480 U.S. 102, 113B16, 107 S. Ct. 1026, 1033B34 (1987); Burger King, 471 U.S. at 477, 105 S. Ct. at 2184.  Only in rare cases will the exercise of
jurisdiction not comport with fair play and substantial justice when the
nonresident defendant has purposefully established minimum contacts in the
forum state.  Guardian Royal, 815
S.W.2d at 231; see also Schlobohm, 784 S.W.2d at 358.








Appellants contend that the
burden of litigating in Texas is Asimply too great to justify jurisdiction@ because the individual Appellants live in Minnesota, Illinois, or
Michigan and because Appellant Glencoe is a Delaware corporation with its
headquarters in Illinois.  Distance from
the forum is generally not sufficient to defeat jurisdiction because the availability
of Amodern transportation and communication have made it less burdensome
for a party sued to defend himself in a State where he engages in economic
activity.@  McGee v. Int=l Life Ins. Co., 355 U.S. 220, 223, 78
S. Ct. 199, 201 (1957).  Further, Texas
has a manifest interest in providing its residents with a convenient forum for
redressing injuries inflicted by out-of-state actors.  See 
Burger King, 471 U.S. at 479B82, 105 S. Ct. at 2185B87.  Moreover, Appellees have
chosen to file suit in Texas, and Gernsbacher and Zintgraff have an interest in
obtaining convenient and effective relief in Texas, where they reside and where
they once owned businesses that were acquired by SESC.  Finally, because Appellants hail from several
different states, there will be some degree of inconvenience on at least some
of them regardless of where litigation proceeds.

Ultimately, Appellants have
not identified any considerations that would render jurisdiction in Texas
unreasonable or that provide them with a vested right not to be sued in Texas.  See Burger King, 471 U.S. at 477, 105 S.
Ct. at 2184B85.  We therefore hold that the trial court=s exercise of personal jurisdiction over Appellants would not offend
traditional notions of fair play and substantial justice.  See Tempest Broad. Corp. v. Imlay, 150
S.W.3d 861, 876 (Tex. App.CHouston [14th Dist.] 2004, no pet.); Cartlidge v. Hernandez, 9
S.W.3d 341, 350 (Tex. App.CHouston [14th Dist.] 1999, no pet.); Rowland & Rowland, P.C. v.
Tex. Employers Indem. Co., 973 S.W.2d 432, 436 (Tex. App.CAustin 1998, no pet.).

 

 








III.     Conclusion  

Because Appellants
established minimum contacts with Texas sufficient to subject them to specific
jurisdiction in a Texas court and because the exercise of such jurisdiction
would not offend traditional notions of fair play and substantial justice, we
overrule their second and third issues and, not having reached their first
issue, we affirm the trial court=s denial of their special appearances.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:       GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED:  October 9, 2008











[1]Appellant
Evans, an Illinois resident and Glencoe=s CEO, served as an SESC
director from September 2000 through March 2002 and as SESC=s vice
president from January 2000 though 2005. 
Appellant Manetti (also an Illinois resident) has been a member of
Glencoe Capital=s
senior management since the summer of 2001 and served as an SESC director from
November 2001 through March 2002. 





[2]In
their first issue, Appellants ague that the trial court lacks general
jurisdiction over them.  Appellees did
not allege general jurisdiction in the trial court and have not briefed it on
appeal.  Therefore, and because we
ultimately determine that the trial court had specific jurisdiction over
Appellants, we need not address general jurisdiction or Appellants=
first issue.  See Tex. R. App. P.
47.1.