Opinion issued March 18, 2010










 


 

 




In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-09-00365-CV

____________


JENIFFER ALOYSIUS, Appellant


v.


MARK KISLINGBURY AND STENOMASTER, INC., Appellees






On Appeal from the 270th District Court 

Harris County, Texas

Trial Court Cause No. 2008-23683







MEMORANDUM OPINION

 Appellant, Jeniffer Aloysius ("Aloysius") appeals the trial court's denial of her
special appearance. Aloysius complains that the trial court erred because she lacks
the necessary minimum contacts with Texas to establish its jurisdiction over her. 
Aloysius also complains that the trial court erred by failing to dismiss this suit
because Appellee, StenoMaster, Inc. ("StenoMaster") lacks capacity to bring suit,
Texas is an inconvenient forum in which to litigate this case, the parties are engaged
in an ongoing discovery dispute, the petition fails to state a claim against her, and
StenoMaster and Appellee Mark Kislingbury ("Kislingbury") have engaged in
sanctionable conduct. We affirm. 

BACKGROUND

Formation of StenoMaster, Inc.

 Kislingbury created a proprietary court reporting system he calls
"StenoMaster." According to Kislingbury, Aloysius, who was in Colorado, contacted
him in Texas regarding a seminar on his court reporting system to be held in
Colorado. (1) Kislingbury traveled to Colorado to conduct the seminar in April 2004. 
During that trip to Colorado, Aloysius proposed that they form a business venture to
market his court reporting system. (2) Aloysius proposed that she would do the behind-the-scenes work of marketing and management and that Kislingbury would continue
teaching seminars to court reporters in multiple states. Aloysius and Kislingbury
discussed the particulars of the corporation by telephone and e-mail after Kislingbury
returned to Texas. According to Kislingbury "[the] agreement for [Aloysius] to
manage StenoMaster was to be performed, at least in part, in Texas by [Aloysius]
marketing, organizing and attending seminars that I would teach in Texas as well as
other states."

 Pursuant to the February 14, 2004 Stenomaster, Incorporated Agreement (the
"Agreement"), Kislingbury owned 75% of the company, while Aloysius owned 25%. (3) 
The Agreement stated that StenoMaster was to be a Colorado corporation and
required Aloysius and Kislingbury to apportion all liabilities and revenue according
to their respective percentage of ownership. Further, Aloysius and Kislingbury
agreed that they would "consult with each other prior to committing Corporate funds
or extending Corporate liability and will do so only upon mutual agreement." The
Agreement stated that it was "premised upon the applicable and relevant laws of the
State of Colorado and other governmental entities of proper jurisdiction in effect as
of the date of incorporation . . . ." Aloysius signed the Agreement in Colorado, then
she mailed it to Kislingbury, who signed it in Texas. According to Aloysius,
Kislingbury was the sole author of the Agreement and he presented it to her as a "take
it or leave it" offer. 

 After StenoMaster was formed, Kislingbury opened a bank account for the
company in Texas. Aloysius was a signatory on the account, and to that end, she
mailed a signed signature card to the bank in Texas. Aloysius received bank
statements in Colorado from the Texas bank, and she reconciled and managed the
Texas bank account from Colorado. In an affidavit submitted to the trial court,
however, Aloysius stated that "[f]rom the time he opened the bank account to the
present, Mr. Kislingbury has retained access, control and signatory rights to the bank
account . . . ." Aloysius stated, "I have never been to the bank. I managed the
account solely as a representative of StenoMaster." All funds and payments Aloysius
received from StenoMaster were from the Texas bank account. 

 Aloysius traveled to Texas on several occasions for StenoMaster. Kislingbury
stated that he saw her "at least five times" at "several events" in Texas relating to
StenoMaster and court reporting. Additionally, Kislingbury stated that Aloysius
traveled to Texas in February 2006 to scout locations for a StenoMaster court
reporting school. Aloysius admitted that she attended conventions in Texas on
StenoMaster's behalf, and that she sold books and other materials at the StenoMaster
booth at those Texas conventions. While in Texas, however, Aloysius contended that
she did not "market in Texas" because "Mark's reputation made it impossible for me
to do anything there." Aloysius also contended that, while she scheduled seminars
in other states on behalf of StenoMaster, Kislingbury was responsible for setting up
seminars in Texas. Aloysius did admit that, while in Texas to attend conventions, she
discussed StenoMaster business and operations with Kislingbury. Aloysius also
purchased equipment for StenoMaster in Colorado and shipped it to Kislingbury in
Texas.

 Aloysius leased space in her home in Colorado to StenoMaster, for which she
was paid by StenoMaster from its Texas bank account. Although Aloysius performed
many management and accounting tasks in Colorado, Aloysius and Kislingbury
agreed that Kislingbury would prepare the company's tax returns in Texas. 

 Although she admits in her brief that she made seven trips to Texas, Aloysius
contends that she has never been to Texas "on any occasion other than in my capacity
as a representative of StenoMaster" and each trip she made to Texas was made "at the
request of Mr. Kislingbury." Further, she affirmed that 

 [StenoMaster] does not have an office in Houston, Harris County or
Texas. Its activities are/were conducted from Denver, Colorado. . . . 

 The agreement between the parties was in Denver, Colorado.


 I am not a resident of the State of Texas and have had no purposeful
contacts with this state. I do not conduct any business in Texas. I reside
in Denver, Colorado and conduct all meaningful business of the subject
corporation from Denver, Colorado. My alleged acts and activities that
caused injury to Mr. Kislingbury did not occur in Texas. I did not
purposefully direct my acts and activities to Texas, and plaintiff's cause
of action did not arise from or relate to any of my alleged acts, omissions
and/or contacts with Texas. Rather, plaintiff's cause of action arose
from alleged wrongdoings by me as an officer of StenoMaster, Inc. All
meaningful actions and activities on behalf of StenoMaster, Inc. were
conducted in Denver, Colorado. I have also not had continuous or
systematic contact with Texas.


 This court's assumption of jurisdiction over me will cause significant
burden on me.


 . . . .


 I know of no potential witnesses in this case in Texas other than Mr.
Kislingbury. 


 I am a resident of Colorado and have been at all times relevant to this
suit including the present. I operated StenoMaster out of three addresses
all of them in Denver, Colorado. StenoMaster maintained its sole office
in Colorado; therefore discovery into the income and expenses related
to the operation of StenoMaster's office will involve vendors in
Colorado, not Texas. All of the "related" corporations I operate are
Colorado operations. 


The Lawsuit

 Kislingbury and StenoMaster filed suit against Aloysius in Harris County. 
Their pleadings alleged Kislingbury is a Texas resident, StenoMaster is a Colorado
corporation doing business in Texas, and Aloysius is a Colorado resident. They
further alleged the court had personal jurisdiction over Aloysius because she
contracted with a Texas resident with performance in whole or part in Texas, and
because she had committed a tort in Texas. Additionally, they alleged Aloysius had
purposefully availed herself of the privileges and benefits of conducting business in
Texas and she had sufficient minimum contacts with Texas to sustain jurisdiction. 

 Kislingbury and StenoMaster alleged that Aloysius had committed fraud,
conversion, misappropriation, ultra vires acts and negligence, and that she had
breached her fiduciary duties. Kislingbury also sued for breach of contract. 
According to Kislingbury, Aloysius had misappropriated StenoMaster funds from the
Texas bank account by writing herself checks without his approval and she was
unable to justify those expenditures. Kislingbury and StenoMaster also sought an
accounting and the imposition of a constructive trust. They prayed for a declaratory
judgment that Aloysius had committed ultra vires acts and that all actions taken by
her on behalf of StenoMaster on or after January 1, 2007 were void. Aloysius filed
a special appearance, contending that the court lacked jurisdiction over her. On
August 8, 2008, the trial court denied Aloysius' initial special appearance. Shortly
thereafter, on August 28, 2008, Aloysius filed a "First Amended Special Appearance
or, Alternatively, Motion for Re-hearing of Defendant's Special Appearance." On
September 23, 2008, the trial court granted Aloysius' special appearance. One week
later, Kislingbury and StenoMaster filed a motion for reconsideration, which the trial
court granted. The trial court also ordered that Aloysius be deposed on issues
regarding personal jurisdiction. After her deposition, Aloysius filed a Second
Amended Special Appearance. Kislingbury and StenoMaster filed a response to
Aloysius' Second Amended Special Appearance, attaching affidavits and a transcript
of Aloysius' deposition. The trial court ultimately denied Aloysius' Second Amended
Special Appearance. Aloysius now brings this appeal. 

ANALYSIS

I. Court of Appeals' Jurisdiction

 We first address our own jurisdiction to address the various issues raised by
Aloysius in this appeal. See M.O. Dental Lab v. Rape, 139 S.W.3d 671, 673 (Tex.
2004) (stating that reviewing court is obligated to review sua sponte issues affecting
jurisdiction). In her briefing, Aloysius attempts to raise issues other than the trial
court's denial of her special appearance, including the capacity of StenoMaster as a
non-registered foreign corporation to maintain a lawsuit in Texas, the convenience
of Texas as a forum for this case, an ongoing discovery dispute, whether Kislingbury
and StenoMaster fail to state a claim against her, and what she describes as
"sanctionable" conduct by Kislingbury and StenoMaster.

 This Court only has jurisdiction to consider appeals from final judgments or
orders, with very limited exceptions such as the denial of a special appearance. See,
e.g., Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 & n.12 (Tex. 2001); Tex. Civ. 
Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008) (authorizing interlocutory
appeals from denial of special appearance). Because the trial court has not signed a
final judgment or order relating to the issues Aloysius raises in addition to the denial
of her special appearance, we lack jurisdiction to reach these issues. See Tex. R. App.
P. 42.3(a). We next turn to the trial court's denial of Aloysius' special appearance.

II. Aloysius' Special Appearance

 A. Standard of Review

 The existence of personal jurisdiction is a question of law reviewed de novo. 
BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). However,
this question must sometimes be preceded by resolving underlying factual disputes. 
Id. When, as here, the trial court does not issue fact findings, we presume that the
trial court resolved all factual disputes in favor of its ruling. Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).

 B. Personal Jurisdiction

 "Texas courts may assert personal jurisdiction over a nonresident defendant
only if the Texas long-arm statute authorizes jurisdiction and the exercise of
jurisdiction is consistent with federal and state due process standards." Id. (citing
Guardian Royal Exch. Assur. Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991); see Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Vernon
2008) (Texas's long-arm statute). The long-arm statute allows Texas courts to
exercise jurisdiction over a nonresident defendant that "does business" in the state.
Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

 In addition to other acts that may constitute doing business, a nonresident does
business in this state if the nonresident: 

 (1) contracts by mail or otherwise with a Texas resident and either party
is to perform the contract in whole or in part in this state;


 (2) commits a tort in whole or in part in this state; or


 (3) recruits Texas residents, directly or through an intermediary located
in this state, for employment inside or outside this state.


Id. This list, however, is not exhaustive. BMC Software, 83 S.W.3d at 795. The
Texas Supreme Court has held that "section 17.042' s broad language extends Texas
courts' personal jurisdiction as far as the federal constitutional requirements of due
process will permit." Id. (citation omitted).

 Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the
forum state and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Id. A nonresident defendant's minimum contacts
must derive from purposeful availment: a nonresident defendant must have
"purposefully availed" itself of the privileges and benefits of conducting business in
the foreign jurisdiction to establish sufficient contacts with the forum to confer
personal jurisdiction. Id.; Xenos Yuen v. Fisher, 227 S.W.3d 193, 200 (Tex. App.--
Houston [1st Dist.] 2007, no pet.). An act or acts "by which the defendant
purposefully avails itself of the privilege of conducting activities" in Texas and "thus
invok[es] the benefits and protections" of Texas law constitutes sufficient contact
with Texas to confer personal jurisdiction. Michiana Easy Livin' Country, Inc. v.
Holten, 168 S.W.3d 777, 784 (Tex. 2005) (emphasis in original) (quoting Hanson v.
Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958)).

 We consider three elements of purposeful availment. See Michiana, 168
S.W.3d at 785. First, we consider only the defendant's own actions, not those of the
plaintiff or any other third party. Id. Second, the activities must be purposeful, not
random, isolated, or fortuitous. Id. "It is the quality, rather than the quantity of the
contacts that is determinative." First Oil PLC v. ATP Oil & Gas Corp., 264 S.W.3d
767, 782 (Tex. App.--Houston [1st Dist.] 2008, pet. denied). Third, the defendant
must seek some benefit, advantage, or profit by virtue of its activities in the proposed
forum state, because this element is based on the notion of implied consent. 
Michiana, 168 S.W.3d at 785.

 Our jurisdictional analysis is further divided into general and specific personal
jurisdiction. CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex. 1996). General
jurisdiction will attach when "a defendant's contacts are continuous and systematic,
permitting the forum to exercise personal jurisdiction over the defendant even if the
cause of action did not arise from or relate to activities conducted within the forum
state." Id. To support general jurisdiction, the defendant's forum activities must have
been "substantial," which requires stronger evidence of contacts than for specific
personal jurisdiction. Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 114
(Tex. App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.). General jurisdiction is
premised on the nonresident having consented to jurisdiction through its continuous
contact invoking the benefits and protections of Texas law. Am. Type Culture
Collection, 83 S.W.3d at 808. This analysis focuses on the nature and quality of the
contacts, as opposed to the quantity. Id. at 810.

 Specific jurisdiction lies when the defendant's alleged liability arises from or
is related to an activity conducted within the forum. BMC Software, 83 S.W.3d at
796. "[F]or a nonresident defendant's forum contacts to support an exercise of
specific jurisdiction, there must be a substantial connection between those contacts
and the operative facts of the litigation." Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 585 (Tex. 2007). This requirement assesses "the strength of the
necessary connection between the defendant, the forum, and the litigation." Id. at
584.

 Initially, the plaintiff bears the burden of pleading allegations sufficient to
bring a nonresident defendant within the terms of the Texas long-arm statute. Am.
Type Culture Collection, 83 S.W.3d at 807. However, when a nonresident defendant
files a special appearance, that defendant assumes the burden of negating all bases of
personal jurisdiction that the plaintiff has alleged. Id. The plaintiff's original
pleadings as well as its response to the defendant's special appearance can be
considered in determining whether the plaintiff satisfied its burden. Wright v. Sage
Eng'g, Inc., 137 S.W.3d 238, 249 n.7 (Tex. App.--Houston [1st Dist.] 2004, pet.
denied). Further, Rule 120a states that courts may consider evidence from "the
pleadings, any stipulations made by and between the parties, such affidavits and
attachments as may be filed by the parties, the results of discovery processes, and any
oral testimony." Tex. R. Civ. P. 120a(3); see also Gutierrez v. Deloitte & Touche,
100 S.W.3d 261, 273 (Tex. App.--San Antonio 2002, pet. dism'd).

 C. Minimum Contacts

 Aloysius appears to contend that the trial court lacked jurisdiction over her
because all of her actions in Texas or directed to Texas were related to her capacity
as a representative of StenoMaster. To that end, we construe Aloysius' brief as an
attempt to assert the fiduciary shield doctrine. 

 The fiduciary shield doctrine protects a corporate officer or employee from the
exercise of general personal jurisdiction when all of the contacts with Texas were on
behalf of his employer. Wright, 137 S.W.3d at 250. Texas courts applying the
fiduciary shield doctrine have limited its application to attempts to exercise general
jurisdiction over a nonresident defendant. Id. It does not protect a corporate officer
from specific personal jurisdiction as to intentional torts or fraudulent acts. Id.; see
also SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 650-51 (Tex. App.--Fort
Worth 2003, pet. denied) (nonresident officer of foreign corporation subject to
personal jurisdiction where officer participated in decision to terminate tenants'
leases while directing others to assure tenants building would be rebuilt); D.H. Blair
Inv. Banking Corp. v. Reardon, 97 S.W.3d 269, 278 (Tex. App.--Houston [14th
Dist.] 2002, pet. dism'd w.o.j.) (nonresident officers of corporation subject to
jurisdiction in Texas in suit by shareholders of that corporation for fraud, negligent
misrepresentation, breach of fiduciary duty and conspiracy); Smith v. Lanier, 998
S.W.2d 324, 334-35 (Tex. App.--Austin 1999, pet. denied) ("[a]n agency
relationship does not shield an individual from jurisdictional contacts with a state
. . . ."). Further, the crux of the allegations against Aloysius is that she individually
committed torts and breaches of the StenoMaster Agreement against StenoMaster and
Kislingbury, not merely that she is an officer or director of StenoMaster. See, e.g.,
Eagle Metal Prods. v. Keymark Enters., 651 F.Supp.2d 577, 586 (N.D. Tex. 2009)
(noting that claims against CEO were against him individually, not as agent, and
fiduciary shield doctrine therefore did not apply). We therefore find that the fiduciary
shield doctrine is not applicable in this case to prevent the exercise of jurisdiction
over Aloysius. 

 1. General Jurisdiction

 Kislingbury and StenoMaster argue that the trial court had both general and
specific jurisdiction over Aloysius. The "minimum contacts inquiry is broader and
more demanding when general jurisdiction is alleged, requiring a showing of
substantial activities in the forum state." Schlobohm v. Schapiro, 784 S.W.2d 355,
357 (Tex. 1990). We recently analyzed the requirements for general jurisdiction in 
Capital Finance & Commerce, AG v. Sinopec Overseas Oil & Gas, Ltd., 260 S.W.3d
67 (Tex. App.--Houston [1st Dist.] 2008, no pet.). In Capital Finance, we noted that
general jurisdiction is "dispute-blind" and requires a showing that the defendant
conducted "substantial activities" in Texas. Id. at 80. We therefore examine
Aloysius' activities in Texas to determine if they satisfy this requirement.

 The record shows that Aloysius' contacts with the State of Texas are limited
to her business relationship with StenoMaster and Kislingbury--she does not own
property or generally transact business in the state. She does not personally have any
bank accounts or offices in the state, nor does she travel to Texas for personal
reasons. Instead, the record shows that all of her activities in or directed at Texas
have been limited to involvement with StenoMaster and Kislingbury. When we
consider those facts in contrast with the fact that she is a Colorado resident and
conducts most of her business in locations other than Texas, we cannot conclude that
her contacts with Texas are the kind of "substantial activities" necessary for the
exercise of general jurisdiction over her. 

 2. Specific Jurisdiction

 In the context of specific jurisdiction, the minimum contacts analysis focuses
on the relationship between the defendant, the forum, and the litigation. Kelly v. Gen.
Interior Constr., No. 08-0669, 2010 WL 143985 at *3 (Tex. January 15, 2010); IRA
Res., Inc. v. Griego, 221 S.W.3d 592, 596 (Tex. 2007); Moki Mac, 221 S.W.3d at
575-76.

 We first determine whether minimum contacts exist. Moki Mac, 221 S.W.3d
at 576 ("Before deciding whether Moki Mac's liability arose from or related to its
forum contacts, we must first examine the nature of those contacts and whether Moki
Mac purposefully availed itself of the privilege of conducting business here.").
Minimum contacts are sufficient for personal jurisdiction when the nonresident
defendant "purposefully avails" itself of the privilege of conducting activities within
the forum state, thus invoking the benefits and protections of its laws. Hanson v.
Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958); IRA Res., 221 S.W.3d at
596; Michiana, 168 S.W.3d at 784. Purposeful availment is the "touchstone of
jurisdictional due process." IRA Res., 221 S.W.3d at 596; Michiana, 168 S.W.3d at
784.

 A. Purposeful Availment

 To determine "purposeful availment" we look at only the defendant's
purposeful contacts, excluding those that are random, isolated, or fortuitous.
Michiana, 168 S.W.3d at 785. We determine whether the defendant sought some
benefit, advantage, or profit by "availing" itself of the jurisdiction, thus impliedly
consenting to its laws. Moki Mac, 221 S.W.3d at 578.

 Aloysius was engaged in an ongoing business relationship with Kislingbury,
whom she knew to be a Texas resident and whom she knew to be performing many
of his obligations in Texas. Aloysius and Kislingbury negotiated and amended the
Agreement through which StenoMaster was formed over the telephone while
Kislingbury was in Texas, and Aloysius was aware that he was in Texas. The
Agreement required her to consult with Kislingbury in Texas and obtain his consent
for company expenditures. Even though the corporation they formed was a Colorado
corporation, a significant portion of its business was performed in Texas by both
Kislingbury and also by Aloysius, who admitted traveling to Texas on numerous
occasions to represent StenoMaster and transact business on its behalf. Aloysius and
Kislingbury both testified that they would discuss StenoMaster business on Aloysius'
trips to Texas. Further, StenoMaster's only bank account, from which all payments
were made and all disbursements received, was in Texas. Aloysius sent the Texas
bank a signed signature card as part of starting up StenoMaster's operations, and she
received and reconciled StenoMaster's bank statements from the Texas bank on a
regular basis. Finally, Aloysius admitted purchasing equipment for Kislingbury and
StenoMaster in Colorado and sending that equipment to Texas. 

 On these facts, examining only Aloysius' purposeful contacts with Texas,
excluding those that are random, isolated, or fortuitous, we find that Aloysius availed
herself of Texas and thus impliedly consented to its laws. Moki Mac, 221 S.W.3d at
578; IRA Res., 221 S.W.3d at 596; Michiana, 168 S.W.3d at 785. 

 B. Substantial Connection

 Purposeful availment alone will not support an exercise of specific jurisdiction.
Moki Mac, 221 S.W.3d at 579. Instead, to support specific jurisdiction, there must
also be a substantial connection between the defendant's forum contacts and the
operative facts of the litigation. Id. at 585; Kelly, 2010 WL 143985 at *3. 

 Here, the causes of action asserted by Kislingbury and StenoMaster relate
directly to Aloysius' alleged fraud and mismanagement of the company's Texas bank
account, and her failure to consult with and inform Kislingbury in Texas regarding
business decisions and expenditures. These alleged acts of fraud and malfeasance
involved the operation of a business that she ran with a Texas resident, using money
from and access to the company's sole bank account in Texas, and many of her
alleged acts involved information, equipment and funds being transmitted to or from
Texas. Further, the pleadings and evidence establish that Aloysius traveled to Texas
on much of the StenoMaster business at issue in this lawsuit, and that she and
Kislingbury formed and amended the StenoMaster Agreement at the heart of the
lawsuit while she knew Kislingbury to be in Texas and that he would perform many,
if not all, of his contractual obligations in Texas. In light of these facts and the
allegations raised in the pleadings, we find that there is a "substantial connection
between [Aloysius' purposeful contacts] and the operative facts of the litigation." Id. 
Unlike in Moki Mac and Kelly, Kislingbury's lawsuit is directly related to Aloysius'
alleged embezzlement of funds in Texas. See Moki Mac, 221 S.W.3d at 584 (finding
that parent's suit over son's death during rafting trip in Arizona would primarily
involve evidence regarding the events of that trip, rather than misrepresentations
rafting company made in Texas, and required nexus between rafting company's
activities in Texas and parent's misrepresentation lawsuit was therefore lacking);
Kelly, 2010 WL 143985 at *4 (holding that personal jurisdiction over Arizona
residents improper because suit over construction trust funds failed to allege acts
giving rise to claims that occurred within Texas and plaintiffs never brought forth
evidence establishing requisite link to Texas). 

 D. Fair Play and Substantial Justice

 We now turn to whether the exercise of personal jurisdiction over Aloysius
comports with traditional notions of fair play and substantial justice. See Guardian
Royal, 815 S.W.2d at 226. In making this determination, we consider the following
factors: (1) the burden on the defendants; (2) the interests of the forum state in
adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and
effective relief; (4) the interstate judicial system's interest in obtaining the most
efficient resolution of controversies; and (5) the shared interest of the several states
in furthering fundamental, substantive social policies. Id. at 228. Only in rare cases
will the exercise of jurisdiction not comport with fair play and substantial justice
when the nonresident defendant has purposefully established minimum contacts in
the forum state. Guardian Royal, 815 S.W.2d at 231; see also Schlobohm, 784
S.W.2d at 358 ("Because the minimum contacts analysis now encompasses so many
considerations, it has become less likely that the exercise of jurisdiction will fail a fair
play analysis.").

 Aloysius argues that litigating in Texas would place an unfair burden on her
because she lives in Colorado, many of the records at issue are located in Colorado,
and because many of her witnesses reside in Colorado. Distance from the forum is
generally not sufficient to defeat jurisdiction because the availability of "modern
transportation and communication have made it much less burdensome for a party
sued to defend himself in a State where he engages in economic activity." McGee v.
Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957); see also Glencoe
Capital Partners II, L.P. v. Gernsbacher, 269 S.W.3d 157, 168 (Tex. App.--Fort
Worth 2008, no pet.) (same). Further, Texas has a manifest interest in providing its
residents with a convenient forum for redressing injuries inflicted by out-of-state
actors. See Burger King Corp. v Rudzewicz, 471 U.S. 462, 479-83, 105 S.Ct. 2174,
2185-88. Although StenoMaster was incorporated in Colorado, Kislingbury is a
Texas resident and much of StenoMaster's business was conducted here. Even
Aloysius admits traveling to Texas on several occasions to conduct business for
StenoMaster. 

 Considering these facts, and the facts outlined above, we cannot say that the
exercise of personal jurisdiction over Aloysius by the trial court would offend the
traditional notions of fair play and substantial justice. Accordingly, we overrule
Aloysius' contention that the trial court erred by denying her special appearance. 

CONCLUSION

 We overrule Aloysius' complaint that the trial court erred by denying her
special appearance. We dismiss all other issues in her appeal for lack of jurisdiction.

We affirm the trial court's order denying Aloysius' special appearance. 

 All pending motions are denied. 

 





 George C. Hanks, Jr.

 Justice


Panel consists of Justices Jennings, Hanks and Bland.

1. Aloysius disputes that she contacted Kislingbury, stating instead that he contacted her about
starting a new company in 2003.
2. Aloysius contends that she and Kislingbury first broached the subject in Nevada, not
Colorado.
3. This proportion of ownership was later amended to a 70-30 split. Kislingbury and Aloysius
agreed to this amendment in a telephone conversation while he was in Texas and she was in
Colorado.